UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VINCENT ELIJAH FLORES, et al., | CASE NO. CV F 14-0047 LJO GSA |
| Plaintiffs, | **ORDER TO DISMISS CERTAIN DEFENDANTS AND JUDGMENT THEREON** (Doc. 5.) |
| vs. | |
| EMC MORTGAGE COMPANY, et al., | |
| Defendants. | |
| _____/ | |

## **PRELIMINARY STATEMENT TO PARTIES AND COUNSEL**

Judges in the Eastern District of California carry the heaviest caseload in the nation, and this Court is unable to devote inordinate time and resources to individual cases and matters. This Court must best manage its voluminous caseload without incurring needless delay and misuse of its limited resources. As such, this Court cannot address all arguments, evidence and matters raised by parties and addresses only the arguments, evidence and matters necessary to reach the decision in this order given the shortage of district judges and staff. The parties and counsel are encouraged to contact United States Senators Dianne Feinstein and Barbara Boxer to address this Court's inability to accommodate the parties and this action.

## **INTRODUCTION**

Defendants Bank of New York Mellon ("Mellon"), National Default Servicing ("NDS")

1

and Mortgage Electronic Registration Systems Inc. ("MERS")[1] seek to dismiss as meritless and legally barred plaintiffs Vincent Elijah Flores ("Mr. Flores") and Joe Flores' (collectively "plaintiffs'") wrongful foreclosure and related claims arising from Mr. Flores' loan default and foreclosure of his Visalia, California property ("property").  Plaintiffs respond that invalid assignment of Mr. Flores' loan documents entitles plaintiffs to pursue their claims.  This Court considered defendants' F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the February 20, 2014 hearing, pursuant to Local Rule 230(g).  This Court construes plaintiffs' action as an attempt to thwart, delay and complicate property foreclosure and, for further reasons discussed below, DISMISSES this action against defendants.

## BACKGROUND

### Mr. Flores' Property Loan And Default

Mr. Flores obtained from BSM Financial, L.P. ("BSM Financial") a $208,000 loan secured by a deed of trust ("DOT") record August 19, 2005 against the property.[2]  The DOT identifies Mr. Flores as borrower, BSM Financial as lender, First American Title Company as trustee, and MERS as beneficiary.  By an assignment of deed of trust recorded on May 19, 2010, MERS assigned to Mellon all beneficial interest under the DOT.

After Mr. Flores defaulted on his loan, a notice of default and election to sell under deed of trust was recorded on June 19, 2012.  On September 24, 2012, a substitution of trustee was recorded to substitute NDS as DOT trustee and a notice of trustee's sale of the property was recorded.  On October 29, 2012, a Trustee's Deed Upon Sale was recorded to grant the property to Mellon after an October 17, 2012 auction.

### Plaintiffs' Claims

On November 4, 2013, prior to removal to this Court, plaintiffs filed their 86-page complaint ("complaint"), excluding exhibits, to purport to allege "unlawful conduct" and

---

[1]        This Court will refer to Mellon, NDS and MERS collectively as "defendants."

[2]        Documents pertaining to Mr. Flores' loan and default were recorded with the Official Records County of Tulare.

2

"illegal practices" committed by defendants and others.[3]   The complaint appears to take issue with assignment of the DOT to Mellon and in turn the trustee's sale to Mellon.   The complaint appears to assert that DOT assignment violated a consent judgment ("consent judgment") entered in a U.S. District Court action in the District of Columbia and that Mr. Flores is a third-party beneficiary to the consent judgment.   The complaint further appears to allege that Mellon violated a pooling and servicing agreement ("PSA") because Mellon lacks possession of Mr. Flores' promissory note and DOT and/or failed to securitized the promissory note.   The complaint concludes that the "Property was wrongfully was [sic] sold at a non-judicial foreclosure auction" and alleges federal and California statutory claims and common law claims which will be addressed below.

## DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).   A F.R.Civ.P. 12(b)(6) motion "tests the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).

In addressing dismissal, a court must:   (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir. 1996).   Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted).   A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d

---

[3]       The record is unclear as to why Joe Flores appears as a plaintiff.   As such, this Court refers to "plaintiffs," rather than simply "Mr. Flores" when addressing certain of the complaint's claims and allegations.

638, 643, n. 2 (9th Cir.1986), and must not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983). A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

A plaintiff is obliged "to provide the 'grounds' of his 'entitlement to relief' [which] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554,127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009), the U.S. Supreme Court explained:

> . . . a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit summarized: "In sum, for a complaint to survive [dismissal], the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, 556 U.S. 662, 129 S.Ct. at

1949).

The U.S. Supreme Court applies a "two-prong approach" to address dismissal:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. 662, 129 S.Ct. at 1949-1950.

Moreover, a court may consider exhibits submitted with the complaint. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003).   A "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).   A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003).   Such consideration prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[4]   A "court may disregard

---

[4]      "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the

5

allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)).

Lastly, under F.R.Evid. 201, a court may take judicial notice of "matters of public record." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001); *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986) ("On a motion to dismiss, we may take judicial notice of matters of public record outside the pleadings); *Mack v. South Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir.1986).

With these standards in mind, this Court turns to defendants' challenges to the complaint's claims against them.

### Failure To Satisfy F.R.Civ.P. 8

The complaint is subject to global attack for failure to satisfy F.R.Civ.P. 8, which requires a plaintiff to "plead a short and plain statement of the elements of his or her claim, identifying the transaction or occurrence giving rise to the claim and the elements of the prima facie case." *Bautista v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir. 2000).

F.R.Civ.P. 8(d)(1) requires each allegation to be "simple, concise, and direct." This requirement "applies to good claims as well as bad, and is the basis for dismissal independent of Rule 12(b)(6)." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996). "Something labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint." *McHenry*, 84 F.3d at 1180. "Prolix, confusing complaints . . . impose unfair burdens on litigants and judges." *McHenry*, 84 F.3d at 1179.

Moreover, a pleading may not simply allege a wrong has been committed and demand relief. The underlying requirement is that a pleading give "fair notice" of the claim being asserted and the "grounds upon which it rests." *Yamaguchi v. United States Department of Air Force*, 109 F.3d 1475, 1481 (9th Cir. 1997). Despite the flexible pleading policy of the Federal

---

parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

Rules of Civil Procedure, a complaint must give fair notice and state the elements of the claim plainly and succinctly. *Jones v. Community Redev. Agency*, 733 F.2d 646, 649 (9th Cir. 1984). A plaintiff must allege with at least some degree of particularity overt facts which defendant engaged in to support plaintiff's claim. *Jones*, 733 F.2d at 649. A complaint does not suffice "if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). The U.S. Supreme Court has explained:

> While, for most types of cases, the Federal Rules eliminated the cumbersome requirement that a claimant "set out in detail the facts upon which he bases his claim," *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) (emphasis added), Rule 8(a)(2) still requires a "showing," rather than a blanket assertion, of entitlement to relief. Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only "fair notice" of the nature of the claim, but also "grounds" on which the claim rests.

*Twombly*, 550 U.S. at 556, n. 3, 127 S.Ct. 1955.

The complaint fails to satisfy F.R.Civ.P. 8 and lacks requisite simplicity, conciseness and clarity to assert claims against defendants. The complaint's 86 pages of text is duplicative and lacks necessary cohesion and organization to decipher claims against defendants and others. The rambling complaint lacks facts of defendants' specific wrongdoing to provide fair notice as to what each defendant is to defend. The complaint lacks cognizable claims or legal theories upon which to support defendants' liability and rests on overbroad conclusions that defendants were prohibited to foreclose on the property. The complaint makes passing references and conclusions without supporting facts as to "pattern and practice of defrauding plaintiff," failure "to properly credit payments," "robo-signers," "illegal, deceptive, and unlawful collection," "fabricated substitution of trustees," "fraudulent lien claim," and "fabricated assignment."

The complaint lumps defendants (and apparently others) together and fails to distinguish adequately claims and alleged wrongs among defendants and others. A plaintiff suing multiple defendants "must allege the basis of his claim against each defendant to satisfy Federal Rule of Civil Procedure 8(a)(2), which requires a short and plain statement of the claim

7

to put defendants on sufficient notice of the allegations against them." *Gauvin v. Trombatore*, 682 F.Supp. 1067, 1071 (N.D. Cal. 1988).   "Specific identification of the parties to the activities alleged by the plaintiffs is required in this action to enable the defendant to plead intelligently." *Van Dyke Ford, Inc. v. Ford Motor Co.*, 399 F.Supp. 277, 284 (D. Wis. 1975).

The complaint lacks specific, clearly defined allegations of each defendant's alleged wrongs to give fair notice of claims plainly and succinctly to warrant dismissal of this action. Moreover, the complaint's claims are subject to defenses and are based on legally deficient theories to further warrant dismissal, as discussed below.

## Loan Securitization - Standing

Defendants globally attack the complaint's claims based on securitization of Mr. Flores' loan given plaintiffs' lack of standing to pursue such claims.   Plaintiffs assert that they have standing because they question the validity of assignment of Mr. Flores' loan documents.

"Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor." *Herrera v. Federal Nat. Mortg. Assn.,* 205 Cal.App.4th 1495, 1507, 141 Cal.Rptr.3d 326 (2013) ("As to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note").

The "request for declaratory relief is based on the erroneous theory that all defendants lost their power of sale pursuant to the deed of trust when the original promissory note was assigned to a trust pool. This argument is both unsupported and incorrect."   *Hafiz v. Greenpoint Mortg. Funding, Inc.*, 652 F.Supp.2d 1039, 1043 (N.D. Cal. 2009).   "[C]ourts have uniformly rejected that securitization of a mortgage loan provides the mortgagor a cause of action."   *Velez v. The Bank Of New York Mellon*, 2011 WL 572523, at *4 (D. Hi. 2011) ("The court also rejects Plaintiff's contention that securitization in general somehow gives rise to a cause of action – Plaintiff points to no law or provision in the mortgage preventing this practice, and otherwise cites to no law supporting that securitization can be the basis of a cause of action").

/ / /

/ / /

Plaintiffs appear to assert standing to challenge void assignment of Mr. Flores' loan[5] in that "the entity claiming to be the noteholder was not the true owner of the note," "foreclosure was not concluded at the direction of the correct party," and "the assignment to the securitized trust was at the outset invalid."   Plaintiffs rely on *Glaski v. Bank of America, National Association,* 218 Cal.App.4th 1079, 1082-1083, 160 Cal.Rptr.3d 449 (2013):

> We conclude that, although the borrower's allegations are somewhat confusing and may contain contradictions, he nonetheless has stated a wrongful foreclosure claim under the lenient standards applied to demurrers. We conclude that a borrower may challenge the securitized trust's chain of ownership by alleging the attempts to transfer the deed of trust to the securitized trust (which was formed under New York law) occurred after the trust's closing date. Transfers that violate the terms of the trust instrument are void under New York trust law, and borrowers have standing to challenge void assignments of their loans even though they are not a party to, or a third party beneficiary of, the assignment agreement.

Plaintiffs' reliance on *Glaski* is unavailing.  *Glaski* addressed neither federal pleading requirements nor a F.R.Civ.P. 12(b)(6) challenge.  *Glaski* addressed New York trust law, which plaintiffs fail to demonstrate applies here.  Of key importance, numerous courts disagree with and refuse to follow *Glaski*, including this Court.  *See Snell v. Deutsche Bank Nat. Trust Co.,* 2014 WL 325147, at *5 (E.D. Cal. 2014) ("Until either the California Supreme Court, the Ninth Circuit, or other appellate courts follow *Glaski* or address the discrepancy between *Glaski* and *Jenkins*, this Court will continue to follow the *Jenkins* rule. Therefore, Plaintiff's claims based on alleged violation of the PSA [pooling and servicing agreement] are not viable"); *Newman v. Bank of New York Mellon,* 2013 WL 5603316, at *3, n. 2 (E.D. Cal. 2013) ("the court held that a borrower like Newman has standing to assert a violation of a PSA. However, no courts have yet followed *Glaski* and *Glaski* is in a clear minority on the issue. Until either the California Supreme Court, the Ninth Circuit, or other appellate courts follow *Glaski*, this Court will continue to follow the majority rule").

---

[5]     Plaintiffs' opposition papers make numerous references to invalid assignment of Mr. Flores' loan documents.  However, neither the opposition papers nor complaint sufficiently identify such assignments to validate plaintiffs' assertion of invalid assignments.

Defendants validly challenge plaintiffs' standing to pursue claims arising from securitization of Mr. Flores' loan. "As an unrelated third party to the alleged securitization, and any other subsequent transfers of the beneficial interest under the promissory note, Jenkins [plaintiff borrower] lacks standing to enforce any agreements, including the investment trust's pooling and servicing agreement, relating to such transactions." *Jenkins v. JP Morgan Chase Bank, N.A.,* 216 Cal.App.4th 497, 515, 156 Cal.Rptr.3d 912 (2013); *see In re Correia,* 452 B.R. 319, 324–325 (1st Cir. BAP 2011) (debtors lacked standing to raise violations of pooling and service agreement). "To the extent Plaintiff challenges the securitization of his loan because Freddie Mac [defendant] failed to comply with the terms of its securitization agreement, Plaintiff has no standing to challenge the validity of the securitization of the loan as he is not an investor of the loan trust." *Bascos v. Federal Home Loan Mortg. Corp.,* 2011 WL 3157063, at *6 (C.D. Cal. 2011).

The complaint's claims arising from allegations as to securitization of Mr. Flores' loans fail as legally deficient given plaintiffs' absence of standing. Neither the complaint nor plaintiffs' opposition papers point to facts to suggest improper transfer of Mr. Flores' loan or breach of a relevant pooling and servicing agreement. Plaintiffs' attempt to contest assignment of Mr. Flores' loan fails to invoke their standing in the absence of meaningful legal authority for their position.

## Consent Judgment – Standing

The complaint asserts claims based on defendants' purported violation of the consent judgment, which was among the United States and several financial institutions. Defendants challenge plaintiffs' standing to pursue such claims in that plaintiffs are neither parties to nor third-party beneficiaries of the consent judgment.

"[A] well-settled line of authority from this Court establishes that a consent decree is not enforceable directly or in collateral proceedings by those who are not parties to it even though they were intended to be benefitted by it." *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 750, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975). "Only the Government can seek enforcement of its consent decrees . . . therefore, even if the Government intended its consent

decree to benefit a third party, that party could not enforce it unless the decree so provided." *Beckett v. Air Line Pilots Ass'n*, 995 F.2d 280, 288 (D.C. Cir. 1993). "Parties that benefit from a government contract are generally assumed to be incidental beneficiaries, and may not enforce the contract absent a clear intent to the contrary. Government contracts often benefit the public, but individual members of the public are treated as incidental beneficiaries unless a different intention is manifested." *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1211 (9th Cir.1999) (quotation omitted).  More recently, the Ninth Circuit stated:

> [P]arties that benefit from a government contract are generally assumed to be incidental beneficiaries, rather than intended ones, and so may not enforce the contract absent a clear intent to the contrary. This clear intent hurdle is not satisfied by a contract's recitation of interested constituencies, vague, hortatory pronouncements, statements of purpose, explicit reference to a third party, or even a showing that the contract operates to the third parties' benefit and was entered into with them in mind. Rather, we examine the precise language of the contract for a clear intent to rebut the presumption that the third parties are merely incidental beneficiaries.

*County of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237, 1244 (9th Cir.2009) (quotations omitted), *rev'd on other grounds by Astra USA, Inc. v. Santa Clara County, Cal.*, __ U.S. __, 131 S.Ct. 1342, 179 L.Ed.2d 457 (2011).

Turning to the consent judgment at issue here, a fellow district court concluded that "individual borrowers are merely incidental beneficiaries of the National Mortgage Settlement, and so have no right to bring third-party suits to enforce the Consent Judgment. Thus, any claims that allege a violation of the Consent Judgment should be dismissed." *Rehbein v. CitiMortgage, Inc.,* 937 F.Supp.2d 753, 762 (E.D. Va. 2013); s*ee Jurewitz v. Bank of America, N.A.,*938 F.Supp.2d 994, 998 (S.D. Cal. 2013) ("Plaintiff has failed to allege sufficient facts indicating that she has standing to enforce the Consent Judgment").

The complaint's claims arising out of the consent judgment are legally barred to warrant their dismissal.  Plaintiffs offer no legitimate points to support their standing in connection with the consent judgment.

### Failure To Tender Indebtedness

Defendants assert as a global defense the complaint's failure to allege credibly

plaintiffs' ability to tender the amount due under Mr. Flores' loan to invoke plaintiffs' standing to challenge the foreclosure sale of the property.  Plaintiffs assert that they are relieved of the tender requirement because the trustee's deed upon sale was "void on its face when the foreclosure [was] conducted without authorization to sell."

"When a debtor is in default of a home mortgage loan, and a foreclosure is either pending or has taken place, the debtor must allege a credible tender of the amount of the secured debt to maintain any cause of action for wrongful foreclosure." *Alicea v. GE Money Bank*, 2009 WL 2136969, at *3 (N.D. Cal. 2009).

"A tender is an offer of performance made with the intent to extinguish the obligation." *Arnolds Management Corp. v. Eischen*, 158 Cal.App.3d 575, 580, 205 Cal.Rptr. 15 (1984) (citing Cal. Civ. Code, § 1485; *Still v. Plaza Marina Commercial Corp.,* 21 Cal.App.3d 378, 385, 98 Cal.Rptr. 414 (1971)).  "A tender must be one of full performance . . . and must be unconditional to be valid." *Arnolds Management*, 158 Cal.App.3d at 580, 205 Cal.Rptr. 15. "Nothing short of the full amount due the creditor is sufficient to constitute a valid tender, and the debtor must at his peril offer the full amount." *Rauer's Law etc. Co. v. S. Proctor Co.,* 40 Cal.App. 524, 525, 181 P. 71 (1919).

A defaulted borrower is "required to allege tender of the amount of [the lender's] secured indebtedness in order to maintain any cause of action for irregularity in the sale procedure." *Abdallah v. United Savings Bank*, 43 Cal.App.4th 1101, 1109, 51 Cal.Rptr.2d 286 (1996), *cert. denied*, 519 U.S. 1081, 117 S.Ct. 746 (1997).  "A party may not without payment of the debt, enjoin a sale by a trustee under a power conferred by a deed of trust, or have his title quieted against the purchaser at such a sale, even though the statute of limitations has run against the indebtedness." *Sipe v. McKenna*, 88 Cal.App.2d 1001, 1006, 200 P.2d 61 (1948).

In *FPCI RE-HAB 01 v. E & G Investments, Ltd.*, 207 Cal.App.3d 1018, 1021, 255 Cal.Rptr. 157 (1989), the California Court of Appeal explained:

. . . generally "an action to set aside a trustee's sale for irregularities in sale notice or procedure should be accompanied by an offer to pay the full amount of the debt for which the property was security." . . . . This rule . . . is based upon the equitable maxim that a court of equity will not order a useless act performed. . . . "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a

voidable sale under a deed of trust." . . .   The rationale behind the rule is that if plaintiffs could not have redeemed the property had the sale procedures been proper, any irregularities in the sale did not result in damages to the plaintiffs.   (Citations omitted.)

An action to set aside a foreclosure sale, unaccompanied by an offer to redeem, does not state a cause of action which a court of equity recognizes.  *Karlsen v. American Sav. & Loan Assn.*, 15 Cal.App.3d 112, 117, 92 Cal.Rptr. 851 (1971).  The basic rule is that an offer of performance is of no effect if the person making it is not able to perform.  *Karlsen*, 15 Cal.App.3d at118, 92 Cal.Rptr. 851  (citing Cal. Civ. Code, § 1495).  Simply put, if the offeror "is without the money necessary to make the offer good and knows it" the tender is without legal force or effect.  *Karlsen*, 15 Cal.App.3d at118, 92 Cal.Rptr. 851 (citing several cases).  "It would be futile to set aside a foreclosure sale on the technical ground that notice was improper, if the party making the challenge did not first make full tender and thereby establish his ability to purchase the property."  *United States Cold Storage v. Great Western Savings & Loan Assn.*, 165  Cal.App.3d 1214, 1224, 212 Cal.Rptr. 232 (1985).   "A cause of action 'implicitly integrated' with the irregular sale fails unless the trustor can allege and establish a valid tender."  *Arnolds Management*, 158 Cal.App.3d at 579, 205 Cal.Rptr. 15.

"It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured."  *Shimpones v. Stickney*, 219 Cal. 637, 649, 28 P.2d 673 (1934); *see Mix v. Sodd*, 126 Cal.App.3d 386, 390, 178 Cal.Rptr. 736 (1981) ("a mortgagor in possession may not maintain an action to quiet title, even though the debt is unenforceable"); *Aguilar v. Bocci*, 39 Cal.App.3d 475, 477, 114 Cal.Rptr. 91 (1974) (trustor is unable to quiet title "without discharging his debt").

Moreover, to obtain "rescission or cancellation, the rule is that the complainant is required to do equity, as a condition to his obtaining relief, by restoring to the defendant everything of value which the plaintiff has received in the transaction. . . . The rule applies although the plaintiff was induced to enter into the contract by the fraudulent representations of the defendant."  *Fleming v. Kagan*, 189 Cal.App.2d 791, 796, 11 Cal.Rptr. 737 (1961).  "A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel

a voidable sale under a deed of trust." *Karlsen,* 15 Cal.App.3d at 117, 92 Cal.Rptr. 851. Analyzing "trust deed nonjudicial foreclosure sales issues in the context of common law contract principles" is "unhelpful" given "the comprehensive statutory scheme regulating nonjudicial foreclosure sales." *Residential Capital v. Cal-Western Reconveyance Corp.*, 108 Cal.App.4th 807, 820, 821, 134 Cal.Rptr.2d 162 (2003).

"The rules which govern tenders are strict and are strictly applied." *Nguyen v. Calhoun*, 105 Cal.App.4th 428, 439, 129 Cal.Rptr.2d 436 (2003). "The tenderer must do and offer everything that is necessary on his part to complete the transaction, and must fairly make known his purpose without ambiguity, and the act of tender must be such that it needs only acceptance by the one to whom it is made to complete the transaction." *Gaffney v. Downey Savings & Loan Assn.,* 200 Cal.App.3d 1154, 1165, 246 Cal.Rptr. 421 (1988). The debtor bears "responsibility to make an unambiguous tender of the entire amount due or else suffer the consequence that the tender is of no effect." *Gaffney,* 200 Cal.App.3d at 1165, 246 Cal.Rptr. 421.

Neither the complaint nor record references plaintiffs' credible, legitimate tender of indebtedness or meaningful ability to do so. The complaint attempts to obscure tender by alleging "Plaintiff is ready, willing, and able to unconditionally tender his obligation to the true holder in due course of Note and Deed of Trust." Plaintiffs cannot avoid tender requirements by relying on invalid claims as to loan securitization as an excuse from tender requirements. As discussed more fully below, plaintiffs fail to demonstrate that the property foreclosure was void or unauthorized. Plaintiffs' failure to indicate a credible, legitimate tender of or ability to tender amounts outstanding is construed as their concession of inability to do so. Given Mr. Flores' continuing default, the ability to tender is unsupported. Without plaintiffs' credible, legitimate tender, they seek empty remedies, not capable of being granted.

Plaintiffs point to nothing to avoid tender requirements, and failure to require a tender of Mr. Flores' indebtedness would provide plaintiffs an unjustified windfall. Moreover, the complaint's purported attack on the underlying debt does not excuse tender given the complaint's admission that "Mr. Flores does not dispute that he owes money on his mortgage

obligation."  Without plaintiffs' credible, legitimate tender, the complaint's purported claims are doomed.

### Presumption Of Foreclosure Propriety/Absence Of Prejudice

The complaint's claims fail given the unrebutted presumption of foreclosure propriety and absence of facts to support prejudice to plaintiffs.

#### *Comprehensive Statutory Framework*

Under California law, a lender may pursue non-judicial foreclosure upon default with a deed of trust with a power of sale clause.  "Financing or refinancing of real property is generally accomplished in California through a deed of trust. The borrower (trustor) executes a promissory note and deed of trust, thereby transferring an interest in the property to the lender (beneficiary) as security for repayment of the loan."  *Bartold v. Glendale Federal Bank,* 81 Cal.App.4th 816, 821, 97 Cal.Rptr.2d 226 (2000).  A deed of trust "entitles the lender to reach some asset of the debtor if the note is not paid."  *Alliance Mortgage Co. v. Rothwell,* 10 Cal.4th 1226, 1235, 44 Cal.Rptr.2d 352 (1995).

If a borrower defaults on a loan and the deed of trust contains a power of sale clause, the lender may non-judicially foreclose.  *See McDonald v. Smoke Creek Live Stock Co.*, 209 Cal. 231, 236-237, 286 P. 693 (1930).  "California's nonjudicial foreclosure scheme is set forth in Civil Code sections 2924[, et seq.], which provide a comprehensive framework for the regulation of a nonjudicial foreclosure sale pursuant to a power of sale contained in a deed of trust."  *Moeller v. Lien*, 25 Cal.App.4th 822, 830, 30 Cal.Rptr.2d 777 (1994).  The California Court of Appeal has explained nonjudicial foreclosure's comprehensiveness:

> The comprehensive statutory framework established to govern nonjudicial foreclosure sales is intended to be exhaustive. . . . It includes a myriad of rules relating to notice and right to cure. It would be inconsistent with the comprehensive and exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another unrelated cure provision into statutory nonjudicial foreclosure proceedings.

*Moeller v. Lien,* 25 Cal.App.4th 822, 834, 30 Cal.Rptr.2d 777 (1994); *see I.E. Assoc. v. Safeco Title Ins. Co.*, 39 Cal.3d 281, 285, 216 Cal.Rptr. 438 (1985) ("These provisions cover every aspect of exercise of the power of sale contained in a deed of trust.")

***Authority To Foreclose***

Under California Civil Code section 2924(a)(1), a "trustee, mortgagee or beneficiary or any of their authorized agents" may conduct the foreclosure process.  Under California Civil Code section 2924b(4), a "person authorized to record the notice of default or the notice of sale" includes "an agent for the mortgagee or beneficiary, an agent of the named trustee, any person designated in an executed substitution of trustee, or an agent of that substituted trustee." "Upon default by the trustor, the beneficiary may declare a default and proceed with a nonjudicial foreclosure sale."  *Moeller*, 25 Cal.App.4th at 830, 30 Cal.Rptr.2d 777.

Lack of authorization to initiate foreclosure does not support a wrongful foreclosure claim.  In *Gomes v. Countrywide Home Loans, Inc.,* 192 Cal.App.4th 1149, 1154, 121 Cal.Rptr.3d 819 (2011), the California Court of Appeal explained:

> By asserting a right to bring a court action to determine whether the owner of the Note has authorized its nominee to initiate the foreclosure process, Gomes [plaintiff borrower] is attempting to interject the courts into this comprehensive nonjudicial scheme. As Defendants correctly point out, Gomes has identified no legal authority for such a lawsuit. Nothing in the statutory provisions establishing the nonjudicial foreclosure process suggests that such a judicial proceeding is permitted or contemplated.

California Civil Code section 2924(a) does not "provide for a judicial action to determine whether the person initiating the foreclosure process is indeed authorized, and we see no ground for implying such an action." *Gomes,* 192 Cal.App.4th at 1155, 121 Cal.Rptr.3d 819.  "The recognition of the right to bring a lawsuit to determine a nominee's authorization to proceed with foreclosure on behalf of the noteholder would fundamentally undermine the nonjudicial nature of the process and introduce the possibility of lawsuits filed solely for the purpose of delaying valid foreclosures."  *Gomes,* 192 Cal.App.4th at 1155, 121 Cal.Rptr.3d 819.

***Presumption Of Propriety***

"A properly conducted nonjudicial foreclosure sale constitutes a final adjudication of the rights of the borrower and lender."  *Moeller*, 25 Cal.App.4th at 831, 30 Cal.Rptr.2d 777. "As a general rule, a trustee's sale is complete upon acceptance of the final bid."  *Nguyen v.*

16

*Calhoun*, 105 Cal.App.4th 428, 440-441, 129 Cal.Rptr.2d 436 (2003).   "If the trustee's deed recites that all statutory notice requirements and procedures required by law for the conduct of the foreclosure have been satisfied, a rebuttable presumption arises that the sale has been conducted regularly and properly; this presumption is conclusive as to a bona fide purchaser." *Moeller*, 25 Cal.App.4th at 831, 30 Cal.Rptr.2d 777 (citations omitted).   "A nonjudicial foreclosure sale is accompanied by a common law presumption that it 'was conducted regularly and fairly.'"   *Melendrez v. D & I Investment, Inc.*, 127 Cal.App.4th 1238, 1258, 26 Cal.Rptr.3d 413 (2005) (quoting *Brown v. Busch,* 152 Cal.App.2d 200, 204, 313 P.2d 19 (1957)).   "This presumption may only be rebutted by substantial evidence of prejudicial procedural irregularity." *Melendrez*, 127 Cal.App.4th at 1258, 26 Cal.Rptr.3d 413.

To challenge foreclosure, "it is necessary for the complaint to state a case within the code sections for which reason it is essential to allege the facts affecting the validity and invalidity of the instrument which is attacked." *Kroeker v. Hurlbert,* 38 Cal.App.2d 261, 266, 101 P.2d 101 (1940).

### *Prejudice*

Moreover, the California Court of Appeal has explained that prejudice is required for a wrongful foreclosure claim:

> We also note a plaintiff in a suit for wrongful foreclosure has generally been required to demonstrate the alleged imperfection in the foreclosure process was prejudicial to the plaintiff's interests. . . . Even if MERS lacked authority to transfer the note, it is difficult to conceive how plaintiff was prejudiced by MERS's purported assignment, and there is no allegation to this effect. Because a promissory note is a negotiable instrument, a borrower must anticipate it can and might be transferred to another creditor. As to plaintiff, an assignment merely substituted one creditor for another, without changing her obligations under the note. . . . If MERS indeed lacked authority to make the assignment, the true victim was not plaintiff but the original lender, which would have suffered the unauthorized loss of a $1 million promissory note.

*Fontenot v. Wells Fargo Bank, N.A.*, 198 Cal.App.4th 256, 272, 129 Cal.Rptr.3d 467 (2011); *see Knapp v. Doherty*, 123 Cal.App.4th 76, 86, n. 4, 20 Cal.Rptr.3d 1 (2004) ("A nonjudicial foreclosure sale is presumed to have been conducted regularly and fairly; one attacking the sale must overcome this common law presumption 'by pleading and proving an improper procedure

and the resulting prejudice.'"); *Angell v. Superior Court,* 73 Cal.App.4th 691, 700, 86 Cal.Rptr.2d 657 (1999) (failure to comply with procedural requirements must cause prejudice to plaintiff).

Prejudice is not presumed from "mere irregularities" in the process. *Meux v. Trezevant*, 132 Cal. 487, 490, 64 P. 848 (1901).

A "trustee or mortgagee may be liable to the trustor or mortgagor for damages sustained where there has been an illegal, fraudulent or wilfully oppressive sale of property under a power of sale contained in a mortgage or deed of trust." *Munger v. Moore*, 11 Cal.App.3d 1, 7, 89 Cal.Rptr. 323 (1970).

The complaint lacks meaningful facts of a specific statutory irregularity or misconduct in foreclosure proceedings attributable specifically to defendants. The complaint's unsupported conclusory claims to the effect of absence of authority to foreclose fail to substantiate a discrepancy in the foreclosure process. Nothing in the record indicates that defendants engaged in conduct to cause Mr. Flores prejudice to preclude foreclosure. Plaintiffs' claim of prejudice resulting from foreclosure in illogical in that their failure to pay Mr. Flores' loan resulted in foreclosure. Nothing relieved plaintiffs to make Mr. Flores' payments, for which the complaint acknowledges Mr. Flores was responsible. There are no facts that Mr. Flores was current on his loan payments or could have become current had defendants not committed wrongdoing. The complaint fails to allege facts that Mr. Flores was not credited for made payments or attempted payments or that more than one entity attempted to foreclose on the property concurrently. There are no allegations that plaintiffs were not provided notice of the foreclosure sale. In fact, the complaint alleges that plaintiffs' counsel submitted correspondence to challenge the foreclosure sale to indicate their notice of it.

Moreover, the complaint's claims as to securitization of Mr. Flores' promissory note are an improper attempt to interject this Court into comprehensive non-judicial foreclosure devised by the California Legislature. "Because of the exhaustive nature of this scheme, California appellate courts have refused to read any additional requirements into the non-judicial foreclosure statute." *Lane v. Vitek Real Estate Industries Group*, 713 F.Supp.2d 1092, 1098

(E.D.Cal.2010); *see also Moeller*, 25 Cal.App.4th at 834, 30 Cal.Rptr.2d 777 ("It would be inconsistent with the comprehensive and exhaustive statutory scheme regulating nonjudicial foreclosures to incorporate another unrelated cure provision into statutory nonjudicial foreclosure proceedings").  The complaint lacks allegations to overcome the presumption of foreclosure validity.  As such, the complaint's claims attacking property foreclosure are barred.

Moreover, the complaint's individual claims are subject to dismissal for additional reasons discussed below.

**Declaratory Relief**

The complaint's (first) declaratory relief claim appears to seek a determination whether defendants are authorized to foreclose on the property.

*General Principles*

The Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201, 2202, provides in pertinent part:

> In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. §2201(a).

The DJA's operation "is procedural only." *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth*, 300 U.S. 227, 240, 57 S.Ct. 461, 463 (1937).  "A declaratory judgment is not a theory of recovery." *Commercial Union Ins. Co. v. Walbrook Ins. Co., Ltd.*, 41 F.3d 764, 775 (1st Cir. 1994).  The DJA "merely offers an *additional remedy* to litigants." *Nat'l Union Fire Ins. Co. v. Karp*, 108 F.3d 17, 21 (2nd Cir. 1997) (italics in original).  A DJA action requires a district court to "inquire whether there is a case of actual controversy within its jurisdiction." *American States Ins. Co. v. Kearns*, 15 F.3d 142, 143 (9th Cir. 1994).

Declaratory relief is appropriate "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Bilbrey by Bilbrey v. Brown*, 738 F.2d 1462, 1470 (9th Cir.1984).  A declaratory relief claim operates

19

"prospectively," not to redress past wrongs.  *Britz Fertilizers, Inc. v. Bayer Corp.*, 665 F.Supp.2d 1142, 1173 (E.D. Cal. 2009).

As to a controversy to invoke declaratory relief, the question is whether there is a "substantial controversy, between parties having adverse legal rights, or sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512 (1941).  The U.S. Supreme Court has further explained:

> A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. . . . The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.

*Haworth*, 300 U.S. at 240-241, 57 S.Ct. at 464 (citations omitted).

A declaratory relief action "brings to the present a litigable controversy, which otherwise might only be tried in the future." *Societe de Conditionnement v. Hunter Eng. Co., Inc.*, 655 F.2d 938, 943 (9th Cir. 1981).  As an equitable remedy, declaratory relief is "dependent upon a substantive basis for liability" and has "no separate viability" if all other causes of action are barred.  *Glue-Fold, Inc. v. Slautterback Corp.*, 82 Cal.App.4th 1018, 1023, n. 3, 98 Cal.Rptr.2d 661 (2000).

The complaint seeks to redress past alleged wrongs in connection with authority to foreclose on the property, not prospective wrongdoing.  The complaint fails to allege facts to support an actual controversy and in turn fails to support declaratory relief subject to the DJA.  Moreover, purported declaratory relief fails given dismissal of other claims.  "[D]eclaratory relief does not serve to 'furnish a litigant with a second cause of action for the determination of identical issues.'"  *Gayduchik v. Countrywide Home Loans, Inc.,* 2010 WL 1737109, at *4 (E.D. Cal. 2010) (quoting *General of Am. Ins. Co. v. Lilly*, 258 Cal.App.2d 465, 470, 65 Cal.Rptr. 750 (1968)).  The complaint fails to substantiate an independent claim for declaratory relief, and such claim is subject to dismissal.

### Note Possession

Defendants fault an attempt at declaratory relief based on a claim that possession of Mr.

Flores' original note is a prerequisite to property foreclosure.  According to plaintiffs, although "possession of the note may not be a statutory prerequisite to conduct foreclosure in California, in order for the defendants to have standing and be the real party in interest in any legal action to enforce those terms they must be in possession of the note."

"Under California law, there is no requirement for the production of an original promissory note prior to initiation of a nonjudicial foreclosure. . . . Therefore, the absence of an original promissory note in a nonjudicial foreclosure does not render a foreclosure invalid." *Pantoja v. Countrywide Home Loans, Inc.*, 640 F.Supp.2d 1177, 1186 (N.D. Cal. 2009). "Pursuant to section 2924(a)(1) of the California Civil Code, the trustee of a Deed of Trust has the right to initiate the foreclosure process. Production of the original note is not required to proceed with a non-judicial foreclosure." *Hafiz*, 652 F.Supp.2d at 1043 (citation omitted).

"Under Civil Code section 2924, no party needs to physically possess the promissory note." *Sicairos v. NDEX West, LLC*, 2009 WL 385855, *3 (S.D. Cal. 2009) (citing Cal. Civ. Code, § 2924(a)(1)).  Rather, "[t]he foreclosure process is commenced by the recording of a notice of default and election to sell by the trustee." *Moeller*, 25 Cal.App.4th at 830, 30 Cal.Rptr.2d 777.  "The trustee has the power and the duty to initiate foreclosure proceedings on the property upon the trustor's default, resulting in a sale of the property."  *Hafiz*, 652 F.Supp.2d at 1043 (citation omitted).  An "allegation that the trustee did not have the original note or had not received it is insufficient to render the foreclosure proceeding invalid."  *Neal v. Juarez*, 2007 WL 2140640, *8 (S.D. Cal. 2007).

Plaintiffs' suggestions as to inability to foreclose are unavailing given the absence of need to produce Mr. Flores' original promissory note.  Plaintiffs' assertion that note possession is required to pursue legal action is nonsensical as defendants pursued nonjudicial foreclosure, not court action.  The clear authority is that production of original promissory notes is unnecessary to initiate foreclosure.  Purported declaratory relief based on promissory note possession fails.

In sum, the complaint's (first) declaratory relief claim is legally barred and subject to dismissal with prejudice.

**Negligence**

The complaint's (second) negligence claim appears to allege that by foreclosing on the property, defendants breached duties "to abide by the Consent Judgment," "to exercise reasonable care and skill to follow Federal and California law with regard to enforcement of monetary obligations, and to refrain from taking or failing to take any action against Plaintiff that they did not have the legal authority to do."

Defendants challenge the complaint's failure to allege facts that breach of an actionable duty caused plaintiffs damages.

"The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury." *Mendoza v. City of Los Angeles*, 66 Cal.App.4th 1333, 1339, 78 Cal.Rptr.2d 525 (1998) (citation omitted). "The existence of a duty of care owed by a defendant to a plaintiff is a prerequisite to establishing a claim for negligence." *Nymark v. Heart Fed. Sav. & Loan Assn*, 231 Cal.App.3d 1089, 1095, 283 Cal.Rptr. 53 (1991). "[A]bsent a duty, the defendant's care, or lack of care, is irrelevant." *Software Design & Application, Ltd. v. Hoefer & Arnett, Inc.*, 49 Cal.App.4th 472, 481, 56 Cal.Rptr.2d 756 (1996). "The existence of a legal duty to use reasonable care in a particular factual situation is a question of law for the court to decide." *Vasquez v. Residential Investments, Inc.*, 118 Cal.App.4th 269, 278, 12 Cal.Rptr.3d 846 (2004) (citation omitted).

"The 'legal duty' of care may be of two general types: (a) the duty of a person to use ordinary care in activities from which harm might reasonably be anticipated [, or] (b) [a]n affirmative duty where the person occupies a particular relationship to others. . . . In the first situation, he is not liable unless he is actively careless; in the second, he may be liable for failure to act affirmatively to prevent harm." *McGettigan v. Bay Area Rapid Transit Dist.*, 57 Cal.App.4th 1011, 1016-1017, 67 Cal.Rptr.2d 516 (1997).

There is no actionable duty between a lender and borrower in that loan transactions are arms-length. A lender "owes no duty of care to the [borrowers] in approving their loan. Liability to a borrower for negligence arises only when the lender 'actively participates' in the financed enterprise 'beyond the domain of the usual money lender.'" *Wagner v. Benson*, 101 Cal.App.3d 27, 35, 161 Cal.Rptr. 516 (1980) (citing several cases). "[A]s a general rule, a

financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark*, 231 Cal.App.3d at 1096, 283 Cal.Rptr. 53; *see Myers v. Guarantee Sav. & Loan Assn.*, 79 Cal.App.3d 307, 312, 144 Cal.Rptr. 616 (1978) (no lender liability when lender did not engage "in any activity outside the scope of the normal activities of a lender of construction monies").

"Public policy does not impose upon the Bank absolute liability for the hardships which may befall the [borrower] it finances." *Wagner*, 101 Cal.App.3d at 34, 161 Cal.Rptr. 516. The success of a borrower's investment "is not a benefit of the loan agreement which the Bank is under a duty to protect." *Wagner*, 101 Cal.App.3d at 34, 161 Cal.Rptr. 516 (lender lacked duty to disclose "any information it may have had"). "It is simply not tortious for a commercial lender to lend money, take collateral, or to foreclose on collateral when a debt is not paid." *Sierra-Bay Fed. Land Bank Assn. v. Superior Court*, 227 Cal.App.3d 318, 334, 277 Cal.Rptr. 753 (1991).

Moreover, "loan servicers do not owe a duty to the borrowers of the loans they service." *Shepherd v. American Home Mortg. Services, Inc.*, 2009 WL 4505925, at *2 (E.D. Cal. 2009); *see Huerta v. Ocwen Loan Servicing, Inc.*, 2010 WL 728223, at *4 (N.D. Cal. 2010) ("a loan servicer has no fiduciary duty to a borrower when its involvement in the transaction does not exceed the scope of its conventional role as a loan servicer").

Turning to loan modification, "[n]umerous cases have characterized a loan modification as a traditional money lending activity, warranting application of the rule articulated in *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal.App.3d 1089, 283 Cal.Rptr. 53 (1991), that a financial institution in general owes no duty of care to a borrower." *Settle v. World Sav. Bank, F.S.B.*, 2012 WL 1026103, at *8 (C.D. Cal. 2012). In *Alvarado v. Aurora Loan Services, LLC*, 2012 WL 4475330, at *6 (C.D. Cal. 2012), a fellow district judge explained:

> . . . offering loan modifications is sufficiently entwined with money lending so as to be considered within the scope of typical money lending activities. If money lending institutions were held to a higher standard of care by offering a service that could benefit borrowers whose circumstances have changed, the money lender[s] would be discouraged from leniency and would assert their rights to reclaim the property upon the borrower's default. The conventional-moneylender test shall be sufficient to determine that there is no duty of care owed in servicing Plaintiff's mortgage loan and loan modification. As the Plaintiff is unable to establish a duty, it is unnecessary to

discuss the elements of breach, causation, and damages.

Plaintiffs lack a negligence claim based on defendants' lender and/or servicer roles, particularly in the absence of a duty to forego foreclosure or to provide loan modification. "No such duty exists . . . to determine the borrower's ability to repay the loan. . . . The lender's efforts to determine the creditworthiness and ability to repay by a borrower are for the lender's protection, not the borrower's." *Renteria v. United States*, 452 F.Supp.2d 910, 922-923 (D. Ariz. 2006) (borrowers "had to rely on their own judgment and risk assessment to determine whether or not to accept the loan"). "A commercial lender is not to be regarded as the guarantor of a borrower's success and is not liable for the hardships which may befall a borrower." *Sierra-Bay Fed.*, 227 Cal.App.3d at 334, 277 Cal.Rptr. 753. Defendants had "no interest in the loan" in a role as loan servicer. *See Cleveland v. Deutsche Bank Nat. Trust Co.*, 2009 WL 250017, at *3 (S.D. Cal. 2009).

Defendants owed no actionable duty of care to plaintiffs arising from Mr. Flores' loan and default to support a negligence claim. The complaint lacks facts of special circumstances to impose duties on defendants in that the complaint depicts no more than an arms-length loan transaction, Mr. Flores' subsequent default, and the ensuing property foreclosure. The complaint fails to substantiate a special lending or other relationship or an actionable breach of duty to substantiate a negligence claim.

The complaint's reliance on the consent judgment as a source of defendants' duty is unavailing. A fellow district court dismissed negligence claims based on the consent judgment and observed:

> The Consent Judgment's enforcement provisions never reference the possibility of an enforcement proceeding being brought by an individual borrower as a third-party beneficiary. Instead they allow enforcement actions to be brought by parties to the Consent Judgment or by the monitoring committee that the Consent Judgment establishes. *See* Consent Judgment at 18–20, 22; *see generally* Settlement Terms. The Court therefore finds that the decree's precise language does not establish "a clear intent to rebut the presumption that the third parties [to the Consent Judgment] are merely incidental beneficiaries." *Astra USA*, 588 F.3d at 1244. The Consent Judgment does not provide a basis for Plaintiffs' claims.

*Sanguinetti v. CitiMortgage, Inc.,* 2013 WL 4838765, at *6 (N.D. Cal. 2013).

24

In short, the consent judgment provides no basis for a negligence claim against defendants. The complaint insufficiently attempts to allege defendants' cognizable duty of care let alone its breach to cause plaintiffs damage. Nothing remotely supports a purported claim that defendants provided "substantial assistance" to a tortfeasor which somehow injured plaintiffs.

The complaint's (second) negligence claim fails and is subject to dismissal with prejudice.

## <u>Real Estate Settlement Procedures Act</u>

The complaint's (fourth) claim appears to allege that defendants violated the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. §§ 2601, et seq., based on unsatisfactory responses to correspondence of plaintiffs' counsel near the time of the trustee's sale of the property. The complaint appears to equate the correspondence of plaintiffs' counsel as a qualified written request ("QWR") under RESPA. The RESPA claim faults defendants' failure "to prove up the validity of the notice of trustee sale" given alleged invalidity of the notice of default and election to sell under deed of trust.

### *Sending QWR To Servicer*

RESPA addresses loan servicer duties to respond to borrower inquiries. A QWR is a "written request from the borrower (or an agent of the borrower) for information relating to the servicing of such loan" received by a "servicer of a federally related mortgage loan." 12 U.S.C. § 2605(e)(1)(A). Among other things, a QWR must include information to identify the borrower's name and account and a "statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B)(ii).

The complaint bases its RESPA claims on correspondence of plaintiff's counsel to NDS, the DOT trustee. NDS was not the servicer of Mr. Flores' loan and not obligated under RESPA to respond to a purported QWR. Moreover, as defendants note, plaintiffs did not direct correspondence to the loan servicer until after the foreclosure sale and thus the extinguishment of Mr. Flores' loan. After foreclosure, Mr. Flores' loan was subject neither to servicing nor a QWR.

*Qualification As A QWR*

Defendants challenge that the correspondence of plaintiffs' counsel qualified as a QWR. Defendants note that a QWR must address loan servicing, which is defined "as receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan, including amounts for escrow accounts described in [12 U.S.C.] section 2609 of this title, and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan."

The complaint fails to allege facts that the correspondence of plaintiffs' counsel qualifies as a QWR in that the correspondence addressed authority to foreclose on the property, not plaintiffs' "scheduled periodic payments" or "making the payments of principal and interest."  The complaint's conclusory allegations as to a QWR are insufficient.  *See Lemperle v. Washington Mut. Bank*, 2011 WL 197590, at *2 (S.D. Cal. 2011) (dismissing as factually insufficient a RESPA claim which offered "no factual basis for his claim, merely reciting the elements of the cause of action and the general required content of a QWR"); *Lopez v. U.S. Bank Nat. Ass'n*, 2010 WL 3463622, at *2 (S.D. Cal. 2010) (plaintiff "does not allege when she sent the QWR, to whom, or what she asked for, and for these reasons fails to state a claim under RESPA"); *Walker v. Equity 1 Lenders Group*, 2009 WL 1364430, at *5 (S.D. Cal. 2009) ("The Complaint does not otherwise allege facts to support that Plaintiff sent Aurora a qualified written request").  The complaint lacks supporting facts of a sufficient or credible QWR to doom further RESPA claims.

In sum, the complaint's (fourth) RESPA claim is subject to dismissal with prejudice, and plaintiffs appear to concede as much in their opposition papers.

**Fair Debt Collection Practices Act**

The complaint's fifth claim purports to allege violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692, et seq., based on assertions that defendants "[f]alsely represented the status of the debt" and engaged "in collection activities that cannot be legally taken."

Defendants contest the FDCPA claim in that foreclosure is not debt collection subject to the FDCPA.

The FDCPA makes it unlawful for debt collectors to use abusive tactics while collecting debts for others.  *Perry v. Stewart Title Co.*, 756 F.2d 1197, 1208 (5th Cir. 1985),

*mod. on other grounds*, 761 F.2d 237 (5th Cir. 1985).  The FDCPA defines a debt collector as "any person . . . who regularly collects or attempts to collect . . . debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).  A "debt collector" does not include a person who collects or attempts to collect a debt "to the extent such activity . . . concerns a debt which was not in default at the time it was obtained by such person."  15 U.S.C. 1962a(6)(F).

"The legislative history of section 1692a(6) indicates conclusively that a debt collector does not include the consumer's creditors, a mortgage servicing company, or an assignee of a debt, as long as the debt was not in default at the time it was assigned."  *Perry*, 756 F.2d at 1208; *see F.T.C. v. Check Investors, Inc.*, 502 F.3d 159, 172 (3rd Cir. 2007) ("an assignee of an obligation is not a 'debt collector' if the obligation is not in default at the time of assignment").

The complaint fails to substantiate defendants as debt collectors subject to the FDCPA. *See Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 106 (6th Cir. 1996); *Kloth v. Citibank (South Dakota), N.A.*, 33 F.Supp.2d 115, 1998 (D. Conn. 1998) ("Generally, the FDCPA does not apply to creditors.").  The complaint lacks a valid FDCPA claim and facts that defendants engaged in conduct prohibited by the FDCPA, especially given that defendants do not qualify as debt collectors.

Moreover, as a fellow district judge explained, "the activity of foreclosing on the property pursuant to a deed of trust is not the collection of a debt within the meaning of the FDCPA":

> Foreclosing on a trust deed is distinct from the collection of the obligation to pay money. The FDCPA is intended to curtail objectionable acts occurring in the process of collecting funds from a debtor. But, foreclosing on a trust deed is an entirely different path. Payment of funds is not the object of the foreclosure action. Rather, the lender is foreclosing its interest in the property.

> . . . Foreclosure by the trustee is not the enforcement of the obligation because it is not an attempt to collect funds from the debtor.

*Hulse v. Ocwen Federal Bank, FSB,* 195 F.Supp.2d 1188, 1204 (D. Or. 2002) (actions "in pursuit of the actual foreclosure may not be challenged as FDCPA violations").

The complaint's limited meaningful allegations address foreclosure, not debt collection

activities subject to the FDCPA.  In the absence of facts of actionable debt collection, the complaint's (fifth) FDCPA claim is subject to dismissal with prejudice, and plaintiffs appear to concede as much in their opposition papers.

### Unfair Business Practices

The complaint's sixth claim purports to allege violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code, §§ 17200, et seq., based on defendants' pursuit of property foreclosure and violation of RESPA and the consent judgment.

### *Standing – Injury In Fact*

Defendants challenge plaintiffs' standing to pursue a UCL claim in the absence of an "injury in fact" cognizable under the UCL.

California Business and Professions Code section 17204 limits standing to bring a UCL claim to specified public officials and a private person "who has suffered injury in fact and has lost money or property as a result of the unfair competition."   "This provision requires [plaintiff] to show that she has lost 'money or property' sufficient to constitute an 'injury in fact' under Article III of the Constitution, *see Birdsong v. Apple, Inc.*, 590 F.3d 955, 959–60 (9th Cir.2009), and also requires a 'causal connection' between [defendant's] alleged UCL violation and her injury in fact, *Hall v. Time Inc.*, 158 Cal.App.4th 847, 70 Cal.Rptr.3d 466, 471–72 (2008)."   *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204-1205 (9th Cir. 2010), *cert. denied*, 131 S.Ct. 1817 (2011).

Business and Professions Code section 17203 addresses UCL relief and provides in pertinent part:

> Any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction. The court may make such orders or judgments . . . as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition.  (Bold added.)

"In a suit under the UCL, a public prosecutor may collect civil penalties, but a private plaintiff's remedies are 'generally limited to injunctive relief and restitution.'"   *Kasky v. Nike, Inc.*, 27 Cal.4th 939, 950, 119 Cal.Rptr.2d 296 (2002) (quoting *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 83 Cal.Rptr.2d 548 (1999)).

The complaint lacks facts of plaintiffs' money or property allegedly lost to support a UCL claim in that Mr. Flores was obligated to pay his loan and faced foreclosure if he failed to

28

meet his obligations.   Contrary to plaintiffs' assertion, foreclosure of the property fails to qualify as an injury in fact under the UCL.   As such, the complaint lacks facts to connect alleged damages to defendants.   Foreclosure of the property fails to support a UCL claim in the absence of allegations of plaintiffs' performance to avoid default.   The complaint lacks facts to support plaintiffs' standing to seek UCL relief to warrant dismissal of the UCL claim with prejudice.

### *Unlawful, Unfair Or Fraudulent Practice*

In addition, the complaint fails to allege facts to support UCL violations, and plaintiffs offer no opposition to the contrary.   The UCL claim is subject to dismissal given the complaint's failure to allege a predicate violation of law to support a UCL claim and to allege facts to support an unlawful, unfair or fraudulent business practice.

"Unfair competition is defined to include 'unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising.'" *Blank v. Kirwan*, 39 Cal.3d 311, 329, 216 Cal.Rptr. 718 (1985) (quoting Cal. Bus. & Prof. Code, § 17200).   The UCL establishes three varieties of unfair competition – "acts or practices which are unlawful, or unfair, or fraudulent."   *Shvarts v. Budget Group, Inc.*, 81 Cal.App.4th 1153, 1157, 97 Cal.Rptr.2d 722 (2000).   An "unlawful business activity" includes anything that can properly be called a business practice and that at the same time is forbidden by law. *Blank*, 39 Cal.3d at 329, 216 Cal.Rptr. 718 (citing *People v. McKale*, 25 Cal.3d 626, 631-632, 159 Cal.Rptr. 811 (1979)).   "A business practice is 'unlawful' if it is 'forbidden by law.'"   *Walker v. Countrywide Home Loans, Inc.*, 98 Cal.App.4th 1158, 1169, 121 Cal.Rptr.2d 79 (2002) (quoting *Farmers Ins. Exchange v. Superior Court*, 2 Cal.4th 377, 383, 6 Cal.Rptr.2d 487 (1992)).

The UCL prohibits "unlawful" practices "forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made." *Saunders v. Superior Court*, 27 Cal.App.4th 832, 838, 33 Cal.Rptr.2d 548 (1999).   The UCL "thus creates an independent action when a business practice violates some other law."   *Walker*, 98 Cal.App.4th at 1169, 121 Cal.Rptr.2d 79.   According to the California Supreme Court, the UCL "borrows" violations of other laws and treats them as unlawful practices independently actionable under the UCL.   *Farmers Ins.*, 2 Cal.4th at 383, 6 Cal.Rptr.2d 487.

A fellow district court has explained the borrowing of a violation of law other than the UCL:

To state a claim for an "unlawful" business practice under the UCL, a plaintiff must assert the violation of any other law. *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180, 83 Cal.Rptr.2d 548, 973 P.2d 527 (1999) (stating, "By proscribing 'any unlawful' business practice, section 17200 'borrows' violations of other law and treats them as unlawful practices that the unfair competition law makes independently actionable.") (citation omitted). Where a plaintiff cannot state a claim under the "borrowed" law, she cannot state a UCL claim either. *See, e.g., Smith v. State Farm Mutual Automobile Ins. Co.*, 93 Cal.App.4th 700, 718, 113 Cal.Rptr.2d 399 (2001). Here, Plaintiff has predicated her "unlawful" business practices claim on her TILA [Truth in Lending Act] claim. However, as discussed above, Plaintiff's attempt to state a claim under TILA has failed. Accordingly, Plaintiff has stated no "unlawful" UCL claim.

*Rubio v. Capital One Bank*, 572 F.Supp.2d 1157, 1168 (C.D. Cal. 2008), *affirmed in part, reversed in part*, 613 F.3d 1195 (2010).

Moreover, "a plaintiff may not bring an action under the unfair competition law if some other statutory provision bars such an action or permits the underlying conduct." *Rothschild v. Tyco Internat. (US), Inc.*, 83 Cal.App.4th 488, 494, 99 Cal.Rptr.2d 721 (2000).

"Unfair" under the UCL "means conduct that threatens an incipient violation of an antitrust law, or violates the policy or spirit of one of those laws because its effects are comparable to or the same as a violation of the law, or otherwise significantly threatens or harms competition." *Cal-Tech Communications, Inc. v. Los Angeles Cellular Telephone*, 20 Cal.4th 163,187, 83 Cal.Rptr.2d 548 (1999). A business practice is unfair when it "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Podolsky v. First Healthcare Corp.*, 50 Cal.App.4th 632, 647, 58 Cal.Rptr.2d 89 (1996) (internal quotations and citations omitted). The "unfairness" prong of the UCL "does not give the courts a general license to review the fairness of contracts." *Samura v. Kaiser Found. Health Plan*, 17 Cal.App.4th 1284, 1299 & n. 6, 22 Cal.Rptr.2d 20 (1993).

The "fraudulent" prong under the UCL requires a plaintiff to "show deception to some members of the public, or harm to the public interest," *Watson Laboratories, Inc. v. Rhone-Poulenc Rorer, Inc.*, 178 F.Supp.2d 1099, 1121 (C.D. Ca. 2001), or to allege that "members of the public are likely to be deceived," *Schnall v. Hertz Corp.*, 78 Cal.App.4th 1144, 1167, 93 Cal.Rptr.2d 439 (2000); *Medical Instrument Development Laboratories v. Alcon Laboratories*,

2005 WL 1926673, at *5 (N.D. Cal. 2005).  A UCL "plaintiff need not show that he or others were actually deceived or confused by the conduct or business practice in question."  *Schnall*, 78 Cal.App.4th at 1167, 93 Cal.Rptr.2d 439.

"A plaintiff alleging unfair business practices under these statutes [UCL] must state with reasonable particularity the facts supporting the statutory elements of the violation." *Khoury v. Maly's of California, Inc.*, 14 Cal.App.4th 612, 619, 17 Cal.Rptr.2d 708 (1993); *see People v. McKale*, 25 Cal.3d 626, 635, 159 Cal.Rptr. 811 (1979) ("Without supporting facts demonstrating the illegality of a rule or regulation, an allegation that it is in violation of a specific statute is purely conclusionary and insufficient to withstand demurrer").  Moreover, a UCL claim "cannot be predicated on vicarious liability."  *Emery v. Visa Internat. Service Ass'n*, 95 Cal.App.4th 952, 960, 116 Cal.Rptr.2d 25 (2002).  "The concept of vicarious liability has no application to actions brought under the unfair business practices act."  *People v. Toomey*, 157 Cal.App.3d 1, 14, 203 Cal.Rptr. 642 (1984).  "A defendant's liability must be based on his personal 'participation in the unlawful practices' and 'unbridled control' over the practices that are found to violate section 17200 or 17500." *Emery,* 95 Cal.App.4th at 960, 116 Cal.Rptr.2d 25 (quoting *Toomey*, 157 Cal.App.3d at 15, 203 Cal.Rptr. 642).

The complaint lacks facts of an unlawful, unfair or fraudulent business practice to support a UCL claim, despite the complaint's references to overbroad, conclusory misconduct without specific facts to connect alleged wrongdoing to defendants.  The complaint lumps defendants without facts to distinguish their individual alleged wrongs.  As demonstrated throughout this order, the complaint's claims fail and thus cannot serve as a predicate violation for a UCL claim.  The complaint lacks viable statutory or common law claims and lacks reasonable particularity of facts to support a UCL claim.  The complaint lacks exactitude of fraudulent circumstances for a UCL claim.  The complaint's (sixth) UCL claim fails with its other claims and is subject to dismissal with prejudice.

### **Accounting**

The complaint's (seventh) accounting claim holds defendants to "a fiduciary duty to Plaintiff to properly account for payments made by Plaintiff" and appears to seek a return of Mr. Flores' loan payments.

An accounting action "is a proceeding in equity for the purpose of obtaining a judicial settlement of the accounts of the parties in which proceeding the court will adjudicate the

amount due, administer full relief and render complete justice." *Verdier v. Superior Court in and for City and County of San Francisco,* 88 Cal.App.2d 527, 531, 199 P.2d 325 (1948). An accounting cause of action is equitable and may be sought where the accounts are so complicated that an ordinary legal action demanding a fixed sum is impracticable. *Civic Western Corp. v. Zila Industries, Inc.*, 66 Cal.App.3d 1, 14, 135 Cal.Rptr. 915 (1977). A suit for an accounting will not lie where it appears from the complaint that none is necessary or that there is an adequate remedy at law. *Civic Western*, 66 Cal.App.3d at 14, 135 Cal.Rptr. 915. An accounting will not be accorded with respect to a sum that a plaintiff seeks to recover and alleges in his complaint to be a sum certain. *Civic Western*, 66 Cal.App.3d at 14, 135 Cal.Rptr. 915; *see St. James Church of Christ Holiness v. Superior Court In and For Los Angeles County,* 135 Cal.App.2d 352, 359, 287 P.2d 387 (1955) ("If an action is for an amount which is unliquidated and unascertained and which cannot be determined without an accounting, it is a suit in equity"). Moreover, an accounting claim "need only state facts showing the existence of the relationship which requires an accounting and the statement that some balance is due the plaintiff." *Brea v. McGlashan*, 3 Cal.App.2d 454, 460, 39 P.2d 877 (1934).

"A right to an accounting is derivative; it must be based on other claims." *Janis v. California State Lottery Com.*, 68 Cal.App.4th 824, 833-834, 80 Cal.Rptr.2d 549 (1998). Moreover, as an equitable matter, an accounting frequently "presents a fiduciary relation between the parties in the nature of a trust which brings it especially within equitable remedies." *Kritzer v. Lancaster*, 96 Cal.App.2d 1, 6, 214 P.2d 407 (1950).

Lastly, a plaintiff, "as the party owing money, not the party owed money, has no right to seek an accounting." *Quinteros v. Aurora Loan Services,* 740 F.Supp.2d 1163, 1170 (E.D. Cal. 2010).

The complaint lacks facts to support an accounting, especially given dismissal of the complaint's other claims from which to derive an accounting and the complaint's admission that Mr. Flores "owes money on his mortgage obligation." As the party owing money, Mr. Flores lack standing to seek an accounting. Despite plaintiffs' assertion, there are no facts to support complicated accounts, and presumably plaintiffs have the ability to ascertain what was paid on Mr. Flores' loan. Nothing demonstrates that defendants, or any party to whom Mr. Flores owed money, is subject to an accounting, especially given the lack of its fiduciary

obligations to Mr. Flores.[6]   The complaint fails to invoke equity for an accounting, and the complaint's (seventh) accounting claim is subject to dismissal with prejudice.

### Wrongful Foreclosure

The complaint's (eighth) wrongful foreclosure claim challenges the property foreclosure based on alleged absence of authority to foreclose, violation of the consent judgment, and securitization of Mr. Flores' loan.  As discussed in detail above, plaintiffs lack standing to invoke a claim based on violation of the consent judgment or PSA.  The complaint lacks facts to support irregularity in the property foreclosure, which is presumed proper.  Moreover, the record's absence of Mr. Flores' credible, legitimate tender of amounts owed bars claims in connection with property foreclosure.  The complaint's (eighth) wrongful foreclosure claim is subject to dismissal with prejudice.

### Quiet Title

The complaint's (tenth) quiet title claim seeks "to quiet title against the claims of Defendants" and in "Mr. Flores [sic] name alone" based on apparent assertions that defendants lack authority to foreclose on the property and violated the consent judgment.

Defendants challenge the quiet title claim in absence of a supporting factual or legal basis.

California Code of Civil Procedure section 760.010 provides for an action "to establish title against adverse claims to real or personal property or any interest therein."  California Code of Civil Procedure section 761.020 mandates a "verified" complaint for a quiet title action to include:

1.      A legal description and street address of the subject real property;

2.      The title of plaintiff as to which determination is sought and the basis of the

---

6      The "relationship between a lending institution and its borrower-client is not fiduciary in nature." *Nymark*, 231 Cal.App.3d at 1093, n. 1, 283 Cal.Rptr. 53 (1991) (citing *Price v. Wells Fargo Bank*, 213 Cal.App.3d 465, 476-478, 261 Cal.Rptr. 735 (1989)).  A commercial lender is entitled to pursue its own economic interests in a loan transaction. *Nymark*, 231 Cal.App.3d at 1093, n. 1, 283 Cal.Rptr. 53(citing *Kruse v. Bank of America*, 202 Cal.App.3d 38, 67, 248 Cal.Rptr. 217 (1988)).  Absent "special circumstances" a loan transaction is "at arms-length and there is no fiduciary relationship between the borrower and lender."  *Oaks Management*, 145 Cal.App.4th at 466, 51 Cal.Rptr.3d 561 ("the bank is in no sense a true fiduciary"); *see Downey v. Humphreys*, 102 Cal.App.2d 323, 332, 227 Cal.Rptr. 484 (1951) ("A debt is not a trust and there is not a fiduciary relation between debtor and creditor as such.").  The complaint fails to allege facts to impose fiduciary liability on defendants in the absence of genuine supporting facts.

title;

3. The adverse claims to the title of the plaintiff against which a determination is sought;

4. The date as of which the determination is sought; and

5. A prayer for the determination of the title of the plaintiff against the adverse claims.

The quiet title remedy "is cumulative and not exclusive of any other remedy, form or right of action, or proceeding provided by law for establishing or quieting title to property." Cal. Code Civ. Proc., § 760.030.

The complaint lacks facts as to the legitimate title to which Mr. Flores seeks determination and a legally supported basis for his purported title given his loan default and inability to tender amounts due on his loan. The complaint fails to identify adverse claims with which Mr. Flores has a genuine dispute. A quiet title claim requires an allegation that the plaintiffs "are the rightful owners of the property, i.e., that they have satisfied their obligations under the Deed of Trust." *See Kelley v. Mortgage Electronic Registration Systems, Inc.*, 642 F.Supp.2d 1048, 1057 (N.D. Cal. 2009). The complaint lacks genuine facts that Mr. Flores is the property's rightful owner, has satisfied DOT obligations and thus lacks a properly pled quiet title claim.

Moreover, a purported quiet title claim is doomed in the absence of a tender of amounts owed. "It is settled in California that a mortgagor cannot quiet his title against the mortgagee without paying the debt secured." *Shimpones v. Stickney*, 219 Cal. 637, 649, 28 P.2d 673 (1934). "A party may not without payment of the debt, enjoin a sale by a trustee under a power conferred by a deed of trust, or have his title quieted against the purchaser at such a sale, even though the statute of limitations has run against the indebtedness." *Sipe v. McKenna*, 88 Cal.App.2d 1001, 1006, 200 P.2d 61 (1948); *see Mix v. Sodd*, 126 Cal.App.3d 386, 390, 178 Cal.Rptr. 736 (1981) ("a mortgagor in possession may not maintain an action to quiet title, even though the debt is unenforceable"); *Aguilar v. Bocci*, 39 Cal.App.3d 475, 477, 114 Cal.Rptr. 91 (1974) (trustor is unable to quiet title "without discharging his debt. The cloud

34

upon his title persists until the debt is paid").

"A valid and viable tender of payment of the indebtedness owing is essential to an action to cancel a voidable sale under a deed of trust." *Karlsen v. American Sav. & Loan Ass'n.,* 15 Cal.App.3d 112, 117, 92 Cal.Rptr. 851 (1971).  An "action to set aside the sale, unaccompanied by an offer to redeem, would not state a cause of action which a court of equity would recognize." *Copsey v. Sacramento Bank*, 133 Cal. 659, 662, 66 P. 7 (1901).

Mr. Flores is unable to quiet title in his favor without paying or tendering his outstanding indebtedness.  The complaint and record lack facts to support a legitimate exception from the tender requirements.  With the complaint's absence of a credible, legitimate ability or willingness to tender the indebtedness, a purported quiet title claim fails.  This Court is not in a position to award plaintiffs a windfall.

Lastly, defendants correctly challenge Mr. Flores' standing to quiet title given his mere equitable, not legal, interest in the property derived via the DOT.  *See Lewis v. Superior Court,* 30 Cal.App.4th 1850, 1866, 37 Cal.Rptr.2d 63 (1994) (recorder of lis pendens "never had standing to bring a quiet title action, because whatever interest it might have is only equitable, and the holder of equitable title cannot maintain a quiet title action against the legal owner").

The complaint's (tenth) quiet title claim is subject to dismissal with prejudice.

### Slander Of Title

The complaint's (eleventh) slander of title claim accuses defendants of recording against the property default and foreclosure documents wrongfully and without privilege.  The slander of title claim asserts that Mellon has published matters "that they [sic] are the current owners of the Subject Property which is untrue and disparaging to Plaintiff's interest in the Subject Property."

The elements of slander of title are: (1) publication; (2) falsity; (3) absence of privilege; and (4) disparagement of another's land which is relied upon by a third party and which results in a pecuniary loss.  *Appel v. Burman*, 159 Cal.App.3d 1209, 1214, 206 Cal.Rptr. 259 (1984).

Defendants point to the privileged nature of recording, mailing and delivering of default and foreclosure notices.  Section 2924(d) renders as California Civil Code section 47

"privileged communications" the "mailing, publication, and delivery" of foreclosure notices and "performance" of foreclosure procedures.  "[W]e conclude that the protection granted to nonjudicial foreclosure . . . is the qualified common interest privilege of section 47, subdivision (c)(1)."  *Kachlon v. Markowitz*, 168 Cal.App.4th 316, 341, 85 Cal.Rptr.3d 532 (2008); *see Consumer Solutions REO, LLC v. Hillery*, 658 F.Supp.2d 1002, 1018 (N.D. Cal. 2009) (conduct is "protected by the qualified privilege of § 47(c) so long as . . . not malicious"); *see also Hagberg v. California Federal Bank FSB*, 32 Cal.4th 350, 361 81 P.3d 244 (2004) ("As noted, the only tort claim we have identified as falling outside the privilege established by section 47(b) is malicious prosecution.").

Moreover, foreclosure notices do not slander title in that they do not disparage land. *See Ortiz v. Accredited Home Lenders, Inc.*, 639 F.Supp.2d 1159, 1168 (S.D. Cal. 2009) ("The recorded foreclosure Notices do not affect Plaintiffs' title, ownership, or possession in the Property.")

The complaint lacks facts to support slander of title elements and allegations to address how plaintiffs' reliance on foreclosure documents caused pecuniary loss.  The recording, mailing and delivery of foreclosure documents are privileged to negate a necessary element of the claim.  Plaintiffs can plead no facts to revive a slander of title claim to render the complaint's (eleventh) slander of title claim subject to dismissal with prejudice.

## Breach Of Contract

The complaint's (twelfth) breach of contract claim accuses defendants of breach of the consent judgment.  Plaintiffs' reliance on Mr. Flores' promissory note and DOT are nonsensical given that the claim is based on the consent judgment.  As discussed above, plaintiffs lack standing to pursue claims under the consent judgment to render the complaint's (twelfth) breach of contract claim subject to dismissal with prejudice.

## Emotional Distress

The complaint's (fourteenth) intentional and negligent infliction of emotional distress claim accuses defendants of inflicting emotional distress on plaintiffs in that they lacked authority to foreclose on the property.

### No Tort Remedy

The complaint's claims chiefly arise out of contractual relationships to bar tort claims, including intentional and negligent infliction of emotional distress.

In *Hunter v. Up-Right, Inc.*, 6 Cal.4th 1174, 1180, 26 Cal.Rptr.2d 8 (1993), the California Supreme Court distinguished contract and tort theories:

> We noted that "[t]he distinction between tort and contract is well grounded in common law, and divergent objectives underlie the remedies created in the two areas. Whereas contract actions are created to enforce the intentions of the parties to the agreement, tort law is primarily designed to vindicate 'social policy.' [Citation.]" (*Foley, supra*, 47 Cal.3d at p. 683.)

In *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 517, 28 Cal.Rptr.2d 475 (1994), the California Supreme Court agreed with the following summary of contract law:

> "[W]hen two parties make a contract, they agree upon the rules and regulations which will govern their relationship; the risks inherent in the agreement and the likelihood of its breach. The parties to the contract in essence create a mini-universe for themselves, in which each voluntarily chooses his contracting partner, each trusts the other's willingness to keep his word and honor his commitments, and in which they define their respective obligations, rewards and risks. Under such a scenario, it is appropriate to enforce only such obligations as each party voluntarily assumed, and to give him only such benefits as he expected to receive; this is the function of contract law."

The complaint's claims, especially those premised on the DOT and consent judgment, present a case founded on contract and in turn a limited "contractual relationship" to bar emotional distress claims. Plaintiffs' assertion that their alleged emotional distress arises from loss of the property, rather an property damage, fails to negate the contract origins of their claims.

### Intentional Infliction Of Emotional Distress

The elements of an intentional infliction of emotional distress ("IIED") claim are: (1) defendant's outrageous conduct; (2) defendant's intention to cause, or reckless disregard of the probability of causing, emotional distress; (3) plaintiff's suffering severe or extreme emotional distress; and (4) an actual and proximate causal link between the tortious (outrageous) conduct

and the emotional distress.  *Nally v. Grace Community Church of the Valley*, 47 Cal.3d 278, 300, 253 Cal.Rptr. 97, 110 (1988), *cert. denied*, 490 U.S. 1007, 109 S.Ct. 1644 (1989); *Cole v. Fair Oaks Fire Protection Dist.*, 43 Cal.3d 148, 155, n. 7, 233 Cal.Rptr. 308 (1987).  The "[c]onduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community."  *Davidson v. City of Westminister*, 32 Cal.3d 197, 209, 185 Cal.Rptr. 252 (1982) (quoting *Cervantez v. J.C. Penney Co.*, 24 Cal.3d 579, 593, 156 Cal.Rptr.198 (1979)).  Conduct is extreme and outrageous when it is of a nature which is especially calculated to cause, and does cause, mental distress.  Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.  *Fisher v. San Pedro Peninsula Hosp.*, 214 Cal.App.3d 590, 617, 262 Cal.Rptr. 842, 857 (1989).

To support an intentional infliction of emotional distress claim, the conduct must be more than "intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware."  *Christensen v. Superior Court*, 54 Cal.3d 868, 903, 2 Cal.Rptr.2d 79 (1991).   The California Supreme Court has further explained:

> "The law limits claims of intentional infliction of emotional distress to egregious conduct toward plaintiff proximately caused by defendant." . . . The only exception to this rule is that recognized when the defendant is aware, but acts with reckless disregard, of the plaintiff and the probability that his or her conduct will cause severe emotional distress to that plaintiff. . . . Where reckless disregard of the plaintiff's interests is the theory of recovery, the presence of the plaintiff at the time the outrageous conduct occurs is recognized as the element establishing a higher degree of culpability which, in turn, justifies recovery of greater damages by a broader group of plaintiffs than allowed on a negligent infliction of emotional distress theory. . . .

*Christensen*, 54 Cal.3d at 905-906, 2 Cal.Rptr.2d 79 (citations omitted.)

"An assertion of legal rights in pursuit of one's own economic interests does not qualify as 'outrageous' under this standard."  *Yu v. Signet Bank/Virginia,* 69 Cal.App.4th 1377, 82 Cal.Rptr.2d 304 (1999).  "In the context of debt collection, courts have recognized that the attempted collection of a debt by its very nature often causes the debtor to suffer emotional distress."  *Ross v. Creel Printing & Publishing Co.*, 100 Cal.App.4th 736, 745, 122 Cal.Rptr.2d 787 (2002) (citing *Bundren v. Superior Court*, 145 Cal.App.3d 784, 789, 193 Cal.Rptr. 671

38

(1983)).  "Frequently, the creditor intentionally seeks to create concern and worry in the mind of the debtor in order to induce payment."  *Bundren*, 145 Cal.App.3d at 789, 193 Cal.Rptr. 671.  Such conduct is outrageous only if it exceeds "all reasonable bounds of decency."  *Bundren*, 145 Cal.App.3d at 789, 193 Cal.Rptr. 671.

"The assertion of an economic interest in good faith is privileged, even if it causes emotional distress."  *Ross*, 100 Cal.App.4th at 745, n. 4, 122 Cal.Rptr.2d 787 (citing *Fletcher v. Western National Life Ins. Co.*, 10 Cal.App.3d 376, 395, 89 Cal.Rptr. 78 (1970)); *Cantu v. Resolution Trust Corp.*, 4 Cal.App.4th 857, 888, 6 Cal.Rptr.2d 151 (1992).  "In debtor/creditor cases, the privilege is qualified, in that it can be vitiated where the creditor uses outrageous and unreasonable means in seeking payment."  *Ross*, 100 Cal.App.4th 736, 745, n. 4, 122 Cal.Rptr.2d 787 (citing *Symonds v. Mercury Savings & Loan Assn.*, 225 Cal.App.3d 1458, 1469, 275 Cal.Rptr. 871 (1990)); *see Wislon v. Hynek*, 207 Cal.App.4th 999, 1009, 144 Cal.Rptr.3d 4 (2012) (plaintiffs failed to plead outrageous conduct given "this was a creditor/debtor situation, whereby the defendants were exercising their rights under the loan agreements. There are no allegations that in conducting the foreclosure proceedings any of the defendants threatened, insulted, abused or humiliated the [plaintiffs]").

The complaint fails to allege defendants' outrageous conduct to support an IIED claim in that the complaint addresses matters in which plaintiffs lack standing to pursue and defendants' privileged actions.  The complaint points to no conduct of defendants outside that generally accepted in loan servicing and/or foreclosure, which is inherently stressful for debtors.  The complaint identifies no "severe" emotional distress which plaintiffs allegedly suffered.  The IIED claim fails on its merits to warrant its dismissal with prejudice, especially given plaintiffs' failure provide meaningful support for the claim.

### *Negligent Infliction Of Emotional Distress – Absence Of Duty*

A purported negligent infliction of emotional distress ("NIED") claim fails in the absence of defendants' cognizable duty owed in relation to plaintiffs.

NIED is a form of the tort of negligence, to which the elements of duty, breach of duty, causation and damages apply.  *Huggins v. Longs Drug Stores California, Inc.*, 6 Cal.4th 124,

129, 24 Cal.Rptr.2d 587 (1993).  California law recognizes that "there is no independent tort of negligent infliction of emotional distress" in that "[t]he tort is negligence, a cause of action in which a duty to the plaintiff is an essential element."  *Potter v. Firestone Tire & Rubber Co.*, 6 Cal.4th 965, 984, 25 Cal.Rptr.2d 550 (1993).  The existence of a duty is a question of law. *Marlene F. v. Affiliated Psychiatric Medical Clinic, Inc.*, 48 Cal.3d 583, 588, 257 Cal.Rptr. 98 (1989).

Negligent infliction of emotional distress includes "at least two variants of the theory" – "bystander" cases and "direct victim" cases.  *Wooden v. Raveling*, 61 Cal.App.4th 1035, 1037, 71 Cal.Rptr.2d 891, 892 (1998).  "The distinction between the 'bystander' and the 'direct victim' cases is found in the source of the duty owed by the defendant to the plaintiff." *Burgess v. Superior Court*, 2 Cal.4th 1064, 1072, 9 Cal.Rptr.2d 615 (1992).  "Bystander" claims are typically based on breach of a duty owed to the public in general (*Christensen v. Superior Court*, 54 Cal.3d 868, 884, 2 Cal.Rptr.2d 79 (1991)), whereas a right to recover for emotional distress as a "direct victim" arises from the breach of a duty that is assumed by the defendant or imposed on the defendant as a matter of law, or that arises out of the defendant's preexisting relationship with the plaintiff (*Burgess*, 2 Cal.4th at 1073-1074, 9 Cal.Rptr. 615; *Marlene F.*, 48 Cal.3d at 590, 257 Cal.Rptr. 98).  "[B]ystander liability is premised upon defendant's violation of a duty not to negligently cause emotional distress to people who observe conduct which causes harm to another." *Burgess*, 2 Cal.4th at 1073, 9 Cal.Rptr. 615.

"'Bystander' cases are cases in which the plaintiff was not physically impacted or injured, but instead witnessed someone else being injured due to defendant's negligence." *Wooden*, 61 Cal.App.4th at 1037, 71 Cal.Rptr.2d at 892.  "'Direct victim' cases are cases in which the plaintiff's claim of emotional distress is not based upon witnessing an injury to someone else, but rather is based upon the violation of a duty owed directly to the plaintiff." *Wooden*, 61 Cal.App.4th at 1038, 71 Cal.Rptr.2d at 893-894.  In "direct victim" cases, "well-settled principles of negligence are invoked to determine whether all elements of a cause of action, including duty, are present in a given case." *Burgess*, 2 Cal.4th at 1073, 9 Cal.Rptr.2d 615.  "[U]nless the defendant has assumed a duty to plaintiff in which the emotional condition

40

of the plaintiff is an object, recovery is available only if the emotional distress arises out of the defendant's breach of some other legal duty and emotional distress is proximately caused by that breach of duty." *Potter*, 6 Cal.4th at 985, 25 Cal.Rptr.2d 550.

The complaint fails to allege facts to support either the direct victim or bystander theory and to support defendants' duty for a direct victim theory. The complaint fails to allege facts of physical injury to plaintiffs or others to support a bystander theory. As discussed above, the complaint alleges no facts to support defendants' actionable duty owed to plaintiffs and in turn grounds to support a negligence recovery. A purported NIED claim fails.

In sum, the complaint's (fourteenth) emotional distress claim is subject to dismissal with prejudice.

### Immunities For Trustee NDS

Defendants contend that statutory immunities bar the complaint's claims, including for breach of fiduciary duty, against NDS given its limited role as DOT trustee. Plaintiffs respond that complaint overcomes the immunities based on allegations that NDS breached "duties of loyalty, good faith, candor and independence."

As a reminder, non-judicial foreclosure sales "are governed by a 'comprehensive' statutory scheme. This scheme, which is found in Civil Code sections 2924[, et seq.], evidences a legislative intent that a sale which is properly conducted 'constitutes a final adjudication of the rights of the borrower and lender.'" *Royal Thrift and Loan Co. v. County Escrow, Inc.*, 123 Cal.App.4th 24, 32, 20 Cal.Rptr.3d 37 (2004) (quoting *6 Angels, Inc. v. Stuart-Wright Mortgage, Inc.*, 85 Cal.App.4th 1279, 1283-1284, 102 Cal.Rptr.2d 711, fn. omitted (2001)).

Subsection (d) of California Civil Code section 2924 ("section 2924") renders as California Civil Code section 47 "privileged communications" the "mailing, publication, and delivery" of foreclosure notices and "performance" of foreclosure procedures. The section 2924(d) privilege extended through California Civil Code section 47 applies to tort claims other than malicious prosecution. *Hagberg v. California Federal Bank FSB*, 32 Cal.4th 350, 361 81 P.3d 244 (2004) ("As noted, the only tort claim we have identified as falling outside the privilege established by section 47(b) is malicious prosecution.")

Section 2924(b) provides NDS, as DOT trustee, further protections: "In performing acts required by this article, the trustee shall incur no liability for any good faith error resulting

from reliance on information provided in good faith by the beneficiary regarding the nature and the amount of the default under the secured obligation, deed of trust, or mortgage."

A deed of trust trustee's limited liability is consistent with its limited duties.   An "ordinary trust deed conveys the legal title to the trustee only so far as may be necessary to the execution of the trust."   *Lupertino v. Carbahal*, 35 Cal.App.3d 742, 748, 111 Cal.Rptr. 112 (1973).  A deed of trust "carries none of the incidents of ownership of the property, other than the right to convey upon default on the part of the debtor in the payment of his debt." *Lupertino*, 35 Cal.App.3d at 748, 111 Cal.Rptr. 112 (quoting *Bank of Italy, etc. Assn. v. Bentley*, 217 Cal. 644, 656, 20 P.2d 940 (1933)).   The California Court of Appeal has explained a deed of trust trustee's limited authority:

> The trustee under a deed of trust "is not a true trustee, and owes no fiduciary obligations; [it] merely acts as a common agent for the trustor and beneficiary of the deed of trust. [The trustee's] only duties are: (1) upon default to undertake the steps necessary to foreclose the deed of trust; or (2) upon satisfaction of the secured debt to reconvey the deed of trust." (*Vournas v. Fidelity National Title Ins. Co.* (1999) 73 Cal.App.4th 668, 677, 86 Cal.Rptr.2d 490.) Consistent with this view, California courts have refused to impose duties on the trustee other than those imposed by statute or specified in the deed of trust. As our Supreme Court noted in *I.E. Associates v. Safeco Title Ins. Co.* (1985) 39 Cal.3d 281, 216 Cal.Rptr. 438, 702 P.2d 596, "The rights and powers of trustees in nonjudicial foreclosure proceedings have long been regarded as strictly limited and defined by the contract of the parties and the statutes. . . . [¶] . . . [T]here is no authority for the proposition that a trustee under a deed of trust owes any duties with respect to exercise of the power of sale beyond those specified in the deed and the statutes." ( *Id.* at pp. 287-288, 216 Cal.Rptr. 438, 702 P.2d 596.)

*Heritage Oaks Partners v. First American Title Ins. Co.*, 155 Cal.App.4th 339, 345, 66 Cal.Rptr.3d 510 (2007); *see Monterey SP Partnership v. WL Bangham*, 49 Cal.3d 454, 462-463, 261 Cal.Rtpr. 587 (1989) ("The similarities between a trustee of an express trust and a trustee under a deed of trust end with the name. . . .  the trustee under a deed of trust does not have a true trustee's interest in, and control over, the trust property. Nor is it bound by the fiduciary duties that characterize a true trustee.")

A "trustee has a general duty to conduct the sale 'fairly, openly, reasonably, and with due diligence,' exercising sound discretion to protect the rights of the mortgagor and others." *Hatch v. Collins*, 225 Cal.App.3d 1104, 1112, 275 Cal.Rptr. 476 (1990)(citation omitted).

NDS' alleged wrongs are subject to section 2924(b) and (d) immunity.  In the absence of allegations of NDS' malice or other significant wrongdoing, section immunity 2924(d) bars

purported claims against NDS.  No facts support that NDS acted in bad faith to erode section 2924(b) protection.  There is nothing to suggest that NDS exceeded its DOT trustee authority to initiate property foreclosure.  As such, NDS is immunized from the complaint's claims, which further fail for the reasons addressed above.

### Attempt At Amendment And Malice

Since the complaint lacks actionable claims, plaintiffs are unable to cure claims by allegation of other facts and thus are not granted an attempt to amend.  No further facts are apparent to attempt to support claims, and plaintiffs point to none.  The complaint and plaintiffs' opposition papers raise meritless points, all of which this Court need not address individually.  *See Crain v. Commissioner*, 737 F.2d 1417, 1417 (5th Cir. 1984) ("We perceive no need to refute these arguments with somber reasoning and copious citation of precedent; to do so might suggest that these arguments have some colorable merit.")

Moreover, this Court surmises that plaintiffs brought this action in absence of good faith and seek to exploit the court system solely for delay or to vex defendants, the foreclosure process, and assumption of property possession.[7]  The test for maliciousness is a subjective one and requires the court to "determine the . . . good faith of the applicant."  *Kinney v. Plymouth Rock Squab Co.*, 236 U.S. 43, 46 (1915); *see Wright v. Newsome*, 795 F.2d 964, 968, n. 1 (11th Cir. 1986); *cf. Glick v. Gutbrod*, 782 F.2d 754, 757 (7th Cir. 1986) (court has inherent power to dismiss case demonstrating "clear pattern of abuse of judicial process").  A lack of good faith or malice also can be inferred from a complaint containing untrue material allegations of fact or false statements made with intent to deceive the court.  *See Horsey v. Asher*, 741 F.2d 209, 212 (8th Cir. 1984).  The complaint comprises invalid claims.  An attempt to vex or delay provides further grounds to dismiss this action.

### CONCLUSION, ORDER AND JUDGMENT

For the reasons discussed above, this Court:

1.      DISMISSES with prejudice this action and all claims against defendants;

---

[7]      This evaluation is supported by plaintiffs' failure to oppose dismissal of the complaint's RESPA and FDCPA claims, the only means to support federal question jurisdiction and possible remand to state court with subsequent delay if this Court declined to exercise supplemental jurisdiction over the remaining California statutory and common law claims.  *See* 28 U.S.C. § 1367(c)(2), (3).

2.      ENTERS this JUDGMENT in favor of defendants Bank of New York Mellon, National Default Servicing, and Mortgage Electronic Registration Systems, Inc. and against plaintiffs Vincent Elijah Flores and Joe Flores in that there is no just reason to delay to enter such judgment given plaintiffs' claims against these defendants and that their alleged liability is clear and distinct from claims against and liability of any other defendant.  *See* F.R.Civ.P. 54(b). This JUDGMENT is subject to F.R.App.4(a)'s time limitations to file an appeal of this JUDGMENT; and

3.      ORDERS plaintiffs, no later than February 25, 2014, to file papers either to: (a) dismiss this action against any remaining defendants, including EMC Mortgage Corporation, Cal-Western Reconveyance Corporation, JP Morgan, Chase Bank, N.A., Christina Trowbridge and Whitney K. Cook; or (b) show good cause why this Court should not dismiss this action against any remaining defendants, including EMC Mortgage Corporation, Cal-Western Reconveyance Corporation, JP Morgan, Chase Bank, N.A., Christina Trowbridge and Whitney K. Cook.

**This Court ADMONISHES plaintiffs that this Court will dismiss this action against any remaining defendants, including EMC Mortgage Corporation, Cal-Western Reconveyance Corporation, JP Morgan, Chase Bank, N.A., Christina Trowbridge and Whitney K. Cook, if plaintiffs fail to comply with this order and fail to file timely papers as required by this order.  This Court ADMONISHES plaintiffs' counsel of potential liability under 28 U.S.C. § 1927 and other authorities.  This admonishment is given neither lightly, nor should it be taken lightly.**

IT IS SO ORDERED.

Dated:   __February 18, 2014__          ____/s/ Lawrence J. O'Neill___
                                        UNITED STATES DISTRICT JUDGE